IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Michael T. Shivers, | ) | Civil Action No. 3:09-03357-MBS-JRM |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| | ) | |
| South Carolina Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Michael T. Shivers ("Plaintiff") filed this action against Defendant South Carolina Department of Corrections ("Defendant"), alleging that he was subjected to discrimination and a hostile work environment because of his race and sex, and retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17. This matter is before the court on Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure that was filed on November 11, 2010. (ECF No. 27.) Plaintiff filed opposition to Defendant's motion on December 14, 2010, ECF No. 32, to which Defendant filed a reply on January 7, 2011, ECF No. 34.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, the matter was referred to United States Magistrate Judge Joseph R. McCrorey for pretrial handling. On September 1, 2011, the Magistrate Judge issued a Report and Recommendation in which he recommended that Defendant's motion for summary judgment be granted. (ECF No. 37.) Plaintiff filed objections to the Report and Recommendation on September 26, 2011. (ECF No. 42.) For the reasons set forth below, the court **ACCEPTS** the Report and Recommendation of the Magistrate Judge and **GRANTS** Defendant's motion for summary judgment.

1

I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed thoroughly in the Report and Recommendation. The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate. The court adopts this summary as its own, and will only reference facts pertinent to this analysis of Plaintiff's claims.

Plaintiff is a white male and has been employed by Defendant for approximately 12 years. (ECF No. 1 ¶ 6.) Plaintiff is currently employed by Defendant as a correctional officer. (Id.) During the time period relevant to this action, Plaintiff was assigned to the Kirkland Reception and Evaluation Center in Columbia, South Carolina. (ECF No. 27-5[1], Ex. 1.) Plaintiff alleges that he had been harassed, threatened, demoted, vilified, and subjected to a continuing racially hostile environment by three black males: his captain, Anthony Preacher ("Preacher"); Major Samuel Latta ("Latta"); and his warden, Bernard McKie ("McKie"). (See ECF No. 1 ¶ 8.) From May 2007 through September 2008, Plaintiff received corrective action on five separate occasions for alleged violations of Defendant's rules and regulations. (ECF No. 27-5 ¶ 4.) Plaintiff claims that the corrective actions were the result of a discriminatory and retaliatory campaign against him of engineering charges by Preacher, Latta, and McKie, which eventually led to his demotion.

On May 24, 2007, Plaintiff received a 24 hour suspension for unprofessional conduct. (ECF No. 27-5 ¶ 6.) The suspension occurred as the result of an investigation by Defendant that revealed that Plaintiff was responsible for placing derogatory comments about his co-workers on a Sick Call List, which is a form generally used to identify inmates who have requested medical

---

[1]This document was filed under seal pursuant to a stipulated protective order entered in this action.

attention. (Id.) Defendant determined that Plaintiff wrote the names of his co-workers on the sick call form and, then, wrote derogatory comments about each co-worker he had listed in a column on the form designated for "comments." (See ECF No. 27-5, Ex. 2.) The comments included attributing to his co-workers physical ailments and venereal diseases such as jock itch, herpes, and genital warts as well as negative personal statements. (Id.) Plaintiff did not contest or grieve the suspension resulting from the Sick Call List investigation. (ECF No. 33-1, p. 2; ECF No. 27-2, p. 5.)

On November 19, 2007, Plaintiff received a written warning for inappropriate behavior. (ECF No. 27-5 ¶ 7.) Plaintiff received the written warning because he admittedly called a phone number from a work phone that connected him to a "racist hotline." (ECF No. 27-2, pp. 8-9.) Plaintiff did not contest or grieve the written warning resulting from the incident involving the racist hotline. (ECF No. 27-2, p. 12.)

On March 21, 2008, Plaintiff received a written warning for refusing to carry out the directive of a supervisor. (ECF No. 27-5 ¶ 11.) Plaintiff received this written warning because he failed to carry out to completion an instruction by Preacher to file a police report and incident report regarding Special Olympics buttons that were believed to have been stolen from Plaintiff's car. (ECF No. 27-2, p. 13-19.) Plaintiff met with Preacher about the button incident on March 20, 2008. During that meeting, Preacher told Plaintiff that he was "like a cancer to this shift" and that "[y]ou don't hang out with anybody, or talk to anybody, other than white people." (ECF No. 27-2, p. 35.) In response to Preacher's remarks, Plaintiff filed an incident report outlining Preacher's alleged racial remarks and complaining that Preacher was targeting

3

him in an attempt to force him out of his position. (ECF No. 27-2, p. 35-36; ECF No. 27-5, Ex. 17.)

On April 14, 2008, Plaintiff filed a harassment/hostile work environment complaint with Defendant's Employee Relations Branch in the Division of Human Resources. (ECF No. 27-5 ¶ 23 & Ex. 17.) Plaintiff specifically complained about the remarks made by Preacher during their March 20, 2008 meeting. (Id. Exs. 17, 23.) Plaintiff did not complain about any incidents of harassment prior to the March 20, 2008 meeting. (Id. ¶ 23.)

On April 16, 2008, Robin Gracien, Defendant's chief of the Employee Relations Branch, responded in writing to Plaintiff's complaint, advising him that his allegation was not grievable and did not warrant further action from her office. (ECF No. 27-5 ¶¶ 24-25.) Gracien informed Plaintiff that Michael McCall, the associate warden at the Kirkland Reception and Evaluation Center, would meet with Plaintiff to discuss his concerns. (ECF No. 27-5 ¶¶ 25-26 & Ex. 18.) Thereafter, Plaintiff never contacted Gracien again regarding his complaint and did not file any other complaint with Defendant's Employee Relations Branch. (ECF No. 27-5 ¶ 27.)

On April 29, 2008, Plaintiff received a 24 hour suspension for unprofessional conduct and negligence in carrying out his job duties. (ECF No. 27-5 ¶ 9.) Plaintiff was suspended as a result of two incidents. First, on April 23, 2008, Plaintiff called the supervisor in charge of scheduling, Jerome Gibson, to check on a leave request that he had submitted. (See ECF No. 27-5, Ex. 5.) Gibson informed Plaintiff that his leave request had been denied. (See id.) Plaintiff got upset, insulted and threatened Gibson, and then hung up the phone. (Id.) Plaintiff called Gibson back later to discuss the leave request, but again got angry and hung up on Gibson

4

after hearing his response. (Id.) Gibson reported the incident, which was then referred for corrective action on grounds of unprofessional conduct.

The second incident occurred on April 25, 2008, when Plaintiff broke the seal on a pepper spray gas canister that had been issued to him. (See ECF No. 27-5, Ex. 5.) Pursuant to Defendant's protocol, when the seal on a pepper spray canister broke, the officer was required to complete an incident report and have the canister weighed to determine the amount of gas that had been discharged. (ECF No. 27-2, p. 24.) Plaintiff reported that he had broken the seal on the canister to Preacher, who directed Plaintiff to have the canister weighed. (See ECF No. 27-5, Ex. 5.) According to Preacher, Plaintiff left at the end of his shift without getting the canister weighed. (Id.) As a result, Preacher charged Plaintiff with negligence in carrying out job duties and referred the matter for corrective action. (Id.) Plaintiff did not contest or grieve the 24 hour suspension resulting from the incidents involving Gibson or the pepper spray cannister.

On September 9, 2008, Preacher charged Plaintiff with "Falsification of Documents" and, as a result, Plaintiff was suspended for twenty-four hours and demoted from sergeant to correctional officer, which included a reduction in salary. (ECF No. 27-5 ¶ 10; ECF No. 33-6.) The suspension and demotion occurred after Preacher determined that Plaintiff had filled out a Shakedown/Search Report without having performed the requisite search of the inmate cells identified in the report. (Id.) Based on Defendant's policy, the range of corrective action for falsification of documents ranged from a written warning to termination. (ECF No. 27-5 ¶ 16.) Plaintiff filed a grievance to contest his demotion. (ECF No. 27-5 ¶ 28.) In support of his grievance, Plaintiff failed to allege discrimination based on race or sex in the materials he submitted. (Id.)

On January 19, 2009, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission (SHAC) and the United States Equal Employment Opportunity Commission (EEOC). (ECF No. 27-5 ¶ 29.) In the charge, Plaintiff asserted discrimination based on race and sex; and retaliation. (Id.) SHAC investigated the matter, found no cause to believe that a violation of Human Affairs Law occurred, and issued Plaintiff a "Notice of Right to Sue" on November 16, 2009. (Id. ¶ 30; see also id., Ex. 21.) On December 15, 2009, the EEOC sent notice to Plaintiff that it had adopted SHAC's findings and issued him a "Notice of Suit Rights" letter. (Id. ¶ 31; see also id., Ex. 22.) Thereafter, on December 30, 2009, Plaintiff timely filed this lawsuit alleging four causes of action under Title VII. (See ECF No. 1.) Plaintiff alleged that Defendant discriminated against him on the basis of his race and gender, subjected him to a hostile work environment, and Defendant unlawfully retaliated against Plaintiff by demoting him after he complained about the alleged harassment. (Id.) On February 12, 2010, Defendant filed an Answer to Plaintiff's Complaint denying his allegations and asserting that any actions taken were based on legitimate, non-discriminatory and non-retaliatory reasons. (ECF No. 7.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    Standard

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to

which only "general and conclusory" objections have been made—for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of

7

Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec.9, 2009).

A plaintiff may demonstrate a violation of Title VII through direct or circumstantial evidence.  When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Pursuant to this framework, once the plaintiff establishes a prima facie case of a violation of Title VII, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).  If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253  (1981).

**B.**     **Plaintiff's Discrimination Claim**

The Magistrate Judge found that Plaintiff established a prima facie case of disparate treatment based on Defendant's failure to address the claim in its memoranda in support of summary judgment.  (ECF No. 37, p. 17.)   However, the Magistrate Judge found that the disparate treatment claim fails because Plaintiff could not show that Defendant's articulated reasons for his suspensions and demotion were false or were not the real reasons for the adverse employment actions.  (Id., p. 19.)  The Magistrate Judge further found that Plaintiff could not

8

establish a prima facie case of disparate discipline because Plaintiff could not show that he was subjected to disciplinary measures that were more severe than those measures enforced against other similarly-situated black and/or female employees. (Id., p. 22.) Finally, the Magistrate Judge found that even under a "mixed-motive" framework, Plaintiff had not offered sufficient evidence such that a jury could reasonably conclude that discrimination was a motivating factor in employment action adverse to Plaintiff. (Id., p. 21.)

In his objections to the Report and Recommendation, Plaintiff argues that the Magistrate Judge erred in recommending that the court should grant summary judgment in favor of Defendant on his claims for disparate treatment and disparate discipline. (ECF No. 42, p. 6.) Plaintiff argues that the Magistrate Judge erroneously concluded that he (Plaintiff) could not proceed under a mixed-motive analysis. (Id.) Plaintiff further argues that the Magistrate Judge mistakenly found that any disparate treatment Plaintiff received was caused by his own misconduct. (ECF No. 42, p. 2.) Plaintiff then argues that the Magistrate Judge erred in finding that Plaintiff could not establish a prima facie case of disparate discipline because Plaintiff's evidence did not establish that he was similarly situated to black and female employees who allegedly were given preferential treatment and received less harsh discipline. (ECF No. 42, pp. 6-7.) Finally, Plaintiff argues that pretext is established by his version of the alleged events and when all facts and reasonable inferences are drawn in his favor as the non-moving party. (ECF No. 42, p. 5.)

Title VII makes it unlawful for an employer "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] . . . gender." 42 U.S.C. §

20000e–2(a)(1). Discrimination in violation of Title VII can be shown with evidence that the plaintiff suffered an adverse employment action resulting from disparate treatment. Additionally, a plaintiff may establish discrimination in violation of Title VII by demonstrating that he was subjected to more severe discipline than that to which employees similarly situated to him, but outside plaintiff's protected class, had been subjected.

    1.    Plaintiff's Claim for Disparate Treatment

To make out a prima facie case of disparate treatment in the employment setting, a plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was performing in a manner that satisfied his employer's legitimate job expectations, and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 n. 2 (4th Cir. 2001). "The burden to establish a prima facie case of disparate treatment is not onerous." Burdine, 450 U.S. at 253. If the plaintiff establishes a prima facie case, an inference of discrimination is raised and the burden shifts to defendant to produce admissible evidence that the defendant took adverse employment action "for a legitimate, non-discriminatory reason." Burdine, 450 U.S. at 254. If defendant carries its burden, the presumption of discrimination created by the prima facie case disappears from the case, and the plaintiff must then prove by a preponderance of the evidence that defendant's articulated reason was a pretext for unlawful discrimination. See id. at 253–55. In order for a plaintiff to demonstrate pretext, he must prove "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).

The court concurs in the Magistrate Judge's conclusion that Defendant conceded that Plaintiff had established a prima facie case of disparate treatment because Defendant did not address the evidence in relation to the prima facie elements in its briefs in support of summary judgment. (See ECF No. 37, p. 17.) The court further concurs with the Magistrate Judge's finding that Defendant has satisfied its burden of coming forward with a legitimate, non-discriminatory reason for the adverse employment actions Plaintiff received, that is Plaintiff's poor job performance defined by the Gibson leave incident combined with the pepper spray canister incident, and the false reporting/shakedown incident. (Id. at pp. 18-19.) Plaintiff argues that pretext can be shown by the following: (1) Plaintiff's version of the events that led to corrective action by Defendant; and (2) testimony and statements of other white employees of Defendant who described a "racial atmosphere." However, the court agrees with the Magistrate Judge that Plaintiff has not produced sufficient evidence to meet his burden of proving that Defendant's asserted reasons for suspending and demoting him were a pretext for discrimination. When specifically asked what real evidence he had to support his conclusory allegations of a conspiracy against him, Plaintiff testified that he did not have any. (ECF No. 27-2, p. 104.)

Based upon the foregoing, Plaintiff has failed to present evidence from which a reasonable jury could find that Defendant's articulated reason for suspending and demoting Plaintiff was a pretext for unlawful retaliation. Therefore, Plaintiff's objection to the Report and Recommendation is without merit and summary judgment should be granted to Defendant on Plaintiff's claim for disparate treatment.

2.  Plaintiff's Claim for Disparate Discipline

To state a prima facie case of discriminatory discipline in violation of Title VII, a plaintiff must demonstrate three elements: (1) that the plaintiff is a member of a protected class; (2) that his or her misconduct was of comparable seriousness to the misconduct of employees outside the protected class; and (3) that the discipline imposed on the plaintiff was more severe than that imposed on similarly situated employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985). In determining whether a plaintiff's misconduct is comparable in seriousness to that of employees outside the protected class, a court should consider "the gravity of the offenses on a relative scale." Moore v. City of Charlotte, 754 F.2d 1100, 1107 (4th Cir. 1985) (quoting Solem v. Helm, 463 U.S. 277 (1983)). Exact similarity between the compared offenses is not required. Cook, 988 F.2d at 511 ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances."). To be similarly situated, a "plaintiff must establish that 'other employees' were similarly situated in all relevant respects; that they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" See Ward v. City of North Myrtle Beach, 457 F. Supp. 2d 625, 643 (D.S.C. 2006).

After careful review of the record, the court finds that Plaintiff has met the first two elements of a prima facie case of discriminatory discipline by showing that he is a member of a protected class and by identifying individuals who engaged in conduct of "comparable seriousness" to his conduct. (See ECF No. 27-5 ¶ 19.) However, in concurrence with the

Magistrate Judge's conclusion, the court finds that Plaintiff has not identified comparators that were similarly situated in all relevant respects.

Plaintiff specifically identified two black female employees, Sergeant E.B. and Sergeant N.W., who he claimed were similarly situated. Plaintiff asserted that both of these employees were charged with falsification of documents, but retained their rank and were disciplined less severely than he was. Despite Plaintiff's claims, the record does not support Plaintiff's assertion he is similarly situated to E.B. and N.W. (ECF No. 27-1, p. 20, ECF No. 27-5, Exs. 14 & 15.) Prior to N.W.'s corrective action for falsification of a document for which she received an eight-hour suspension, N.W.'s only prior written warning or corrective action was a written warning for reporting to work late. (Id.) E.B., who received an eight-hour suspension for her falsification of a document, had no prior written warnings or corrective actions. (Id.) In contrast, Plaintiff had committed six rule violations prior to his corrective action for falsification of documents. Therefore, Plaintiff has failed to establish that he was subjected to disciplinary measures that were more severe than those measures enforced against other similarly-situated black and/or female employees. Citing Mahomes v. Potter, 590 F. Supp. 2d 775, 783 (D.S.C. 2008) (finding that the disciplinary history of comparable employees was not similar where the comparator had not been disciplined for over two years before he was given a written warning for the same violation for which Mahomes was terminated and where Mahomes had accumulated multiple suspensions in the two years prior to her final misconduct).

Based upon the foregoing, Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether Defendant subjected Plaintiff to discriminatory discipline based on his race or sex in violation of Title VII. Therefore, Plaintiff's objections to the

Magistrate Judge's Report and Recommendation are without merit and his claim for discriminatory discipline fails as a matter of law.

## C. **Plaintiff's Hostile Work Environment Claim**

The Magistrate Judge found that Plaintiff could not establish a hostile work environment claim. (ECF No. 37, p. 25.) Specifically, the Magistrate Judge found that Plaintiff could not show that the alleged harassment he received was because of his race or sex. The Magistrate Judge further found that the behavior alleged by Plaintiff did not rise to the severe and pervasive standard required to state a claim for a hostile work environment. (Id.)

In his objections to the Report and Recommendation, Plaintiff asserts that the Magistrate Judge erred in finding that he failed to establish a prima facie claim for hostile work environment. Plaintiff argues that he has established that his work environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive . . . ." (ECF No. 42, p. 8 (citing Faragher v. City of Boca Raton, 524 U.S. 775 (1998).) The court disagrees.

Title VII prohibits an employer from subjecting an employee to a hostile work environment because of race, color, or national origin. 42 U.S.C. § 2000e-2(a)(1). To state a prima facie case of a hostile work environment based on race, color, or national origin, a plaintiff must demonstrate that: "(1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, or national origin . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir. 2004);

Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To meet the causation element, a plaintiff must show that "but for" the protected characteristic, he would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). The "severe or pervasive" third element of a hostile work environment claim "has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003). First, a plaintiff must show that he "subjectively perceive[d] the environment to be abusive." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). Second, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82 (1998). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Title VII is not a "general civility code." Oncale, 523 U.S. at 80. Further, when analyzing the third element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

After careful review of the record, the court concurs in the Magistrate Judge's conclusion

that Plaintiff has failed to establish a prima facie case of hostile work environment in violation of Title VII.  The conduct Plaintiff characterizes as harassment simply does not rise to the level required by law to establish a hostile work environment.  Compare E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as bitches and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks"), and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment), and Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf'" on an almost daily basis).  In this regard, Plaintiff has failed to meet his burden of establishing that the unwelcome treatment he received was because of his race or sex.  Plaintiff has further failed to show that the unwelcome conduct was objectively hostile or abusive.  Based upon the foregoing, Plaintiff has failed to present sufficient evidence to raise a genuine issue of fact as to whether Defendant subjected Plaintiff to a hostile work environment based on his race or sex in violation of Title VII.  Therefore, Plaintiff's objections to the Magistrate Judge's Report and Recommendation are without merit and his claim for hostile work environment fails as a matter of law.

**D.      Plaintiff's Retaliation Claims**

The Magistrate Judge found that Plaintiff could not establish a retaliation claim under Title VII because he could not show that he engaged in protected activity. (ECF No. 37, pp. 27.) The Magistrate Judge further found that Plaintiff failed to establish a causal connection between his alleged protected activity and the adverse employment action that he suffered. (Id., p. 28.) Moreover, even if Plaintiff could establish a prima facie case of retaliation, the Magistrate Judge found that Defendant could articulate a legitimate, non-retaliatory reason for its actions that was not a pretext. (Id., pp. 28-29.)

Plaintiff contends that the Magistrate Judge erred in rejecting his retaliation claim. Plaintiff argues that the report, which he filed using Defendant's internal hostile work environment form, constituted protected activity. (ECF No. 42, p. 8.) Plaintiff further argues that the deposition testimony of Preacher and Latta establishes that they knew about his internal complaint and, therefore, a causal connection existed between his protected activity and the adverse employment action he suffered. (ECF No. 42, p. 9.) Finally, Plaintiff argues that pretext is established when all facts and reasonable inferences are drawn in his favor as the non-moving party. (ECF No. 42, p. 5.) As a result, Plaintiff asserts that he has established a prima facie case of retaliation and has shown that Defendant's proffered reasons for its adverse employment actions were pretext. The court disagrees.

Title VII protects individuals from retaliation by providing that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, . . . in any manner in an investigation . . . under this subchapter."

42 U.S.C. § 2000e-3(a).  To demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action."  See Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).  As to the first element, "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998).  "As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause."  Kubicko v. Ogden Logistics Serv., 181 F.3d 544, 551 (4th Cir. 1999).  A plaintiff meets the second element of this test if "a reasonable employee would have found the challenged action materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  The third element of the test may be satisfied merely by close temporal proximity between the protected activity and the adverse employment action.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Under the McDonnell Douglas framework, once a plaintiff has made a prima facie showing, an employer may rebut the inference by offering a non-retaliatory explanation for its actions.  When the employer offers such evidence, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is merely pretext for unlawful retaliation.  King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).  If the plaintiff cannot offer evidence that the employer's

explanation is pretext for retaliation, summary judgment is proper.

After careful review of the record, the court disagrees with the Magistrate Judge's conclusion that Plaintiff has failed to establish a prima facie case of retaliation. The court finds that Plaintiff engaged in protected activity when he filed a report with Defendant using its internal hostile work environment form. Moreover, Plaintiff's suspension and demotion to the position of correctional officer in September 2008 qualify as adverse employment actions. Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999) (An adverse employment action has been found to occur when the plaintiff suffers "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion."). Finally, as for the causal connection, the evidence in the record is that Plaintiff's suspension and demotion occurred approximately five months after he filed a formal complaint alleging harassment. The Fourth Circuit Court of Appeals has held that "very little evidence of a causal connection is required to establish a prima facie case" and "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a prima facie retaliation case. Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998); see also Williams v. Cerberonics, Inc., 871 F.2d 452 (4th Cir. 1989) (holding three-month time period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); Carter v. Ball, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). The court is persuaded that the temporal proximity of Plaintiff's suspension and demotion to his complaint of harassment satisfies the causation element of his prima facie case. As such, Plaintiff has established a prima facie case of retaliation.

Defendant has also proffered a legitimate, nondiscriminatory reason for Plaintiff's demotion: his poor job performance defined by the Gibson leave incident combined with the pepper spray canister incident, and the false reporting/shakedown incident. Accordingly, the burden shifts to Plaintiff to show pretext. Plaintiff argues that pretext can be shown by the following: (1) Plaintiff's version of the events that led to corrective action by Defendant; and (2) testimony and statements of other white employees of Defendant who described a "racial atmosphere." Based upon the foregoing, Plaintiff has failed to present evidence from which a reasonable jury could find that Defendant's articulated reason for terminating Plaintiff was a pretext for unlawful retaliation. Therefore, Plaintiff's objection to the Report and Recommendation is without merit and summary judgment should be granted to Defendant on Plaintiff's claim for retaliation.

### III. CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the motion for summary judgment, ECF No. 27, of Defendant South Carolina Department of Corrections. The court accepts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
UNITED STATES DISTRICT JUDGE

September 30, 2011
Columbia, South Carolina